UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
UNITED STATES OF AMERICA, :
:
v. : **MEMORANDUM AND ORDER**
: 18-CR-92 (WFK)
MAHDI ABDEL-RAHIM, :
:
Defendant. :
---------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 5, 2018, Mahdi Abdel-Rahim ("Defendant") pled guilty to: one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 (Count One); one count of identity theft in violation of 18 U.S.C. § 1028(a)(7) (Count Two); one count of extortionate collection of credit conspiracy in violation of 18 U.S.C. § 894(a) (Count Three); and one count of extortionate collection of credit in violation of 18 U.S.C. § 894(a) (Count Four). Agreement (the "Plea") ¶ 1, ECF No. 663; Information ¶¶ 1–4.[1] Defendant also stipulated to two uncharged offenses in the Plea: one count of knowingly and willfully making materially false, fictious and fraudulent statements and representations to the Federal Bureau of Investigation ("FBI") in violation of 18 U.S.C. § 1001(a)(2) ("Stipulated Offense 1"); and one count of acting as a runner on behalf of two narcotics dealers by delivering marijuana and cocaine in violation of 21 U.S.C. §§ 841(b)(1)(C), (b)(1)(D), and 846 ("Stipulated Offense 2").[2] *See* Plea ¶ 2. The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to time served with no term of supervised release to follow; mandatory restitution in accordance with the forthcoming Order of Restitution; and a $400.00 mandatory special assessment.

## I. Background

### A. Factual Background

#### *1. The Underlying Fraud Scheme*

Since at least 2012, Ppassim Elder ("Elder") recruited individuals—including young members of the Palestinian community, such as Defendant—to commit acts of bank fraud.

---

[1] Citations are to the docket in *United States v. Elder, et al.*, 18-CR-92. Page pincites refer to the ECF page numbers assigned to a filing where available, and where no ECF heading is present, to the page numbers listed in the original filing.

[2] The Court believes the Plea erroneously states Stipulated Offense #2 is a violation of **18** U.S.C. §§ 841(b)(1)(C), (b)(1)(D), and 846, Plea ¶ 2, when it should instead state Defendant violated **21** U.S.C. §§ 841(b)(1)(C), (b)(1)(D), and 846.

Presentence Investigation Report (the "PSR") ¶ 14; ECF No. 559. At Elder's direction, members of the fraud scheme opened bank accounts in their own names and provided account information to Elder. *Id.* The accounts were then used to carry out a variety of fraudulent acts, including tricking individuals to pay for goods or services which were never provided. *Id.* Victims sent money to the accounts, which Elder's co-conspirators quickly withdrew in cash and sent to Elder while keeping a small percentage for themselves. *Id.*

Defendant was involved in at least one such fraud. Between approximately September 2016 and May 2017, Defendant opened accounts in the name of a company called Sajahtera, Inc. (the "Sajahtera Accounts" or the "Accounts"). *Id.* ¶ 18. Defendant was the owner of record for the Accounts, but he permitted Elder to use them. *Id.*

In November 2016, a victim was tricked into sending $212,386.35 to one of the Sajahtera Accounts believing the funds would be used to purchase two real estate properties in Georgia. *Id.* After receiving payment, Defendant withdrew large amounts of this money and distributed it at Elder's direction, including providing two cashier's checks to a business named Garden Valley Distributors. *Id.* The victim ultimately recovered approximately $46,000.00 of the money sent to the Accounts but was left with approximately $166,000.00 unrecovered. *Id.*

2. *Identity Theft*

Apart from the fraudulent use of the Sajahtera Accounts, from approximately August to December 2016, Defendant used a fake driver's license to commit additional crimes. *Id.* ¶ 21. Defendant conspired with Elder to purchase a motorcycle worth over $1,000.00 using the fake identification and to take out a loan under someone else's name. *Id.* Defendant and Elder planned to sell the motorcycle afterwards and split the proceeds. *Id.* They went to the store to attempt to purchase the motorcycle, but were declined by a store employee. *Id.*

Separately, Elder provided Defendant with credit cards and credit card numbers belonging to other people to purchase items, including gas. *Id.*

3. *Extortion of Mahmoud and Hani Kasem*

Defendant was also involved in threatening and extorting a victim of Elder's scheme. *See id.* ¶¶ 25–34. Mahmoud Kasem ("Kasem"), a business owner, was unable to obtain funding to expand his business, Garden Valley Distributors, when Elder approached him and offered to invest. *Id.* ¶¶ 25–26. Elder provided checks to Kasem and requested Kasem withdraw the money as cash. *Id.* ¶ 26. Some of these funds came from other bank frauds perpetrated by Elder's scheme. *See id.* ¶ 18. Elder also requested Kasem issue wire transfers from the Garden Valley Distributors account. *Id.* ¶ 28.

In approximately March 2017, Kasem became skeptical of Elder's transactions and refused to assist, in part, because "[Kasem]'s accountant had indicated it could cause trouble with the IRS." *Id.* ¶ 29. Kasem and Elder's relationship broke down and Elder "demanded [] [Kasem] repay the amount of money left in the [account] from the deposited checks, which was approximately $40,000[.00]." *Id.* ¶ 30.

When Kasem refused due to inability to pay, Elder threatened physical violence. *Id.* ¶¶ 30–31. Pertinent here, in April 2017, Elder hired Defendant—who in turn recruited Mohammed Rabah ("Rabah")—to throw rocks at Kasem's family home. *Id.* ¶ 31. Kasem saw Defendant with a rock in his hand and chased after him. *Id.* Defendant later told Kasem it was Elder who hired him to throw the rock and to physically assault him, which he did not do. *Id.*

Elder subsequently hired co-defendants Wilber Bryant ("Bryant") and Frederick McCoy ("McCoy") to collect the money, which resulted in the killing of Kasem's father, Hani. *See*

Gov't Sent'g Mem. at 2, ECF No. 660. However, Defendant did not participate in, or have knowledge of, this "phase of Elder's extortion of [Kasem and his father]." *Id.*

*4. Stipulated Offenses*

*i. Distribution and Possession with Intent to Distribute*

Between approximately July 2017 and March 2018, Defendant was a runner on behalf of two narcotics dealers, delivering marijuana and cocaine to customers. PSR ¶ 35. The specific drug quantities involved in this conduct are unknown. *Id.*

*ii. False Statements*

In March 2018, following his arrest, Defendant lied about his involvement in the extortion of the Kasem family. *Id.* ¶ 36. Defendant was not truthful about throwing a rock at the family's home. *Id.*

**B. Procedural History**

*1. The Instant Case*

On February 21, 2018, a U.S. Grand Jury returned a then-sealed four-count indictment against Defendant, Elder, McCoy, and Dwayne Ling ("Ling"). ECF No. 1. The same day, then-Chief Magistrate Judge Roanne L. Mann issued a warrant for Defendant's arrest. ECF No. 3.

On March 1, 2018, FBI agents arrested Defendant at his residence. PSR ¶ 37. The same day, Chief Magistrate Judge Vera M. Scanlon arraigned Defendant on the indictment. ECF No. 9. Defendant pled not guilty to all counts and Chief Magistrate Judge Scanlon released Defendant on a $150,000.00 bond. ECF Nos. 9–11.

On November 5, 2018, Defendant waived indictment and pled guilty to the four counts of the Information. *See* Plea ¶ 1; Information ¶¶ 1–4.

2. *Violations of Pretrial and Presentencing Release Conditions*

The U.S. Pretrial Services Agency ("Pretrial Services") notified this Court of several violations of Defendant's pre-trial and pre-sentencing release conditions.

On January 4, 2019, Pretrial Services informed the Court Defendant returned a presumptively positive test result for alcohol and opiates. First Pretrial Violation Mem. at 1, ECF No. 121. The test was administered on November 5, 2018, the same day Defendant pled guilty in the instant case. *See* Nov. 5, 2018 Min. Entry. Pretrial Services requested no action at that time. Pretrial Violation Mem. at 1.

On July 15, 2019, Pretrial Services informed the Court Defendant was arrested on July 8, 2019, in Kings County for possession of a forged instrument in the third degree, operating an unregistered vehicle, and having a missing or improperly displayed license plate. Sec. Pretrial Violation Mem., at 1, ECF No. 182. According to the Government, Defendant "completed three days of community service and the charges were dismissed." Gov't Sent'g Mem. at 2.

3. *Pleas, Verdicts, and Sentencing of Co-Defendants*

On December 18, 2018, McCoy pled guilty to one count of extortionate collection of credit conspiracy, one count of extortionate collection of credit, and one count of causing death through the use of a firearm,[3] pursuant to the first superseding indictment. Dec. 18, 2018 Min. Entry. On October 11, 2023, McCoy was sentenced to 120 months' incarceration to be followed by two years of supervised release. McCoy Sen't Mem. and Order at 1, ECF No. 540.

On August 14, 2019, Ling waived indictment and pled guilty to one count of causing death through the use of a firearm pursuant to a three-count superseding information. Ling First Plea Agreement, ECF No. 189. On August 2, 2023, Ling withdrew his previous guilty plea and

[3] On January 10, 2023, the Court granted the Government's motion to dismiss this last count. ECF No. 449.

entered a new plea to one count of extortion conspiracy and one count of committing physical violence in furtherance of extortion pursuant to a second superseding information. *See* Ling Second Plea Agreement, ECF No. 528. On October 1, 2024, Defendant was sentenced to 235 months' incarceration to be followed by three years of supervised release. *See* Ling Sent'g Mem. and Ord. at 1, ECF No. 564.

On August 19, 2019, Abdelkareem Abu Zahrieh ("Zahrieh") pled guilty to one count of conspiracy to commit bank fraud pursuant to the superseding indictment. *See* Aug. 19, 2019 Min. Entry. On August 25, 2021, Zahrieh was sentenced to ten months' incarceration to be followed by two years of supervised release, and mandatory restitution in the amount of $19,000.00. Zahrieh Sent'g Mem. and Ord. at 1, ECF No. 321.

On March 6, 2020, Rabah pled guilty to one count of conspiracy to commit bank fraud, one count of extortionate collection of credit conspiracy, and one count of extortionate collection of credit. Rabah Plea Agreement¶ 1, ECF No. 247. Rabah also stipulated to two additional, uncharged offenses in the Plea: (1) patronizing a prostitute in violation of New York state law; and (2) access device fraud. *Id.* ¶ 2. On May 21, 2026, Rabah was sentenced to time served to be followed by two years of probation. Rabah Sent'g Mem. and Order at 1, ECF No. 642.

On March 12, 2020, a U.S. Grand Jury returned a fourteen-count third superseding indictment against Elder and Bryant. *See* Third Superseding Indictment, ECF No. 230. Elder and Bryant went to trial from September 20 through October 1, 2021. Elder was found guilty of thirteen counts, while Bryant was found guilty of five counts. *See* Jury Verdict, ECF No. 362. On November 9, 2022, the Court vacated two of the counts. *See* Ord. at 2, ECF No. 435. On February 8, 2023, Elder was sentenced to life incarceration with five years of supervised release. Elder Sent'g Mem. and Ord. at 1, ECF No. 476. The same day, Bryant was sentenced to forty

years' incarceration to be followed by five years of supervised release, and mandatory forfeiture in the amount of $12,800.00. *See* Bryant Sent'g Mem. and Ord. at 1, ECF No. 477.

**II. Legal Standard**

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the Guidelines operate as the "starting point and . . . initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a trial court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state, in open court, the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the Court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

#### 1. *Family and Personal Background*

Defendant was born on July 22, 1993 to the marital union of Subhi and Eitedal Abdel-Rahim. *See* PSR ¶ 91. He was raised in an "average-income household" in Brooklyn, New York. *Id.* ¶ 93. Growing up, Defendant and his siblings shared bedrooms and began working at a young age to support the household. *Id.* Defendant reported no abuse and he had an "overall good childhood." *Id.*

Defendant's mother is now sixty-three years of age and works as a homemaker. *Id.* ¶ 91. Defendant's father is seventy-one years of age and is a retired business owner. *Id.* Both suffer from chronic health conditions. *See id.* Defendant resides with his parents and purportedly acts as their caretaker. *See* PSR ¶ 95; Def.'s Sent'g Mem. at 2. Defendant also has seven siblings: Nafiz, age 45; Ribhi, age 43; Yamina, age 41; Nidda, age 39, Abdelrahim, age 35; Maisa, age 33; and Mohamed, age 30. PSR ¶ 92. Defendant reported his parents and siblings are supportive of him despite his conviction and involvement in the instant offenses. *See id.* ¶¶ 91–92.

Defendant has one child from a prior romantic relationship. *Id.* ¶ 94. His daughter, Layah, resides in Florida with her mother Falestean Kasem. *Id.* Ms. Kasem has full custody of Layah, however, Defendant voluntarily sends $300.00 per month in child support and visits regularly. *Id.* According to the PSR, Ms. Kasem is not aware of Defendant's conviction in the instant case. *Id.*

In addition to the above, the Court has considered the letters of support from Defendant's family and friends which were submitted on his behalf. *See* Def.'s Sent'g Mem., Ex. B.

2. *Educational and Employment History*

In June 2012, Defendant graduated from Fort Hamilton High School in Brooklyn, New York. PSR ¶ 100. From September 2012 to June 2013, Defendant studied sociology at the College of Staten Island ("CSI") but he did not earn a degree. *Id.* ¶ 101. Defendant later attended Kingsborough Community College in Brooklyn, New York, and obtained an associate's degree in June 2016. *Id.* ¶ 102.

In June 2021, Defendant obtained a Bachelor of Arts in both sociology and anthropology from CSI. *Id.* ¶ 103. Defendant also completed a gas pump technician course in San Francisco in June 2024. *Id.* ¶ 104.

As for employment, from approximately 2010 to 2013, Defendant worked as a clerk in his father's store. *Id.* ¶ 109. From 2013 to 2015, Defendant was a handyman at a construction business in Brooklyn. *Id.* From approximately 2016 to 2017, Defendant worked at a Dollar Tree in Brooklyn. *Id.* From November 2018 until May 2020, Defendant worked in packaging at an Amazon fulfillment center in Staten Island, New York, earning approximately $600.00 per week. *Id.* ¶ 108.

Defendant was unemployed until he began working in July 2023 as a salesperson for RCN Cable Company in Queens, New York. *Id.* ¶¶ 106–107. He earned between $1,200.00 and $1,500.00 per month in this role. *Id.* ¶ 106. Defendant has been unemployed since departing this role in March 2024. *Id.* ¶ 105.

After reviewing Defendant's financial position, the U.S. Probation Office ("Probation") concludes "[Defendant] appears unable to pay a fine. *Id.* ¶ 113.

3. *Prior Convictions*

On July 14, 2017, Defendant was arrested in Staten Island, New York. *Id.* ¶ 85. During an altercation with an unknown party, Defendant displayed a firearm and stated "I am a NYPD detective. What are you going to do[.]" *Id.* ¶ 85. He was sentenced to a conditional discharge on January 31, 2018. *Id.*

4. *Physical and Mental Health*

Defendant is healthy and reported no history of health problems. *Id.* ¶ 97. Defendant also indicated he has no prior or current mental health or emotional conditions. *Id.* ¶ 98.

5. *Substance Abuse*

Defendant reports no history of alcohol or substance abuse. *Id.* ¶ 99. Defendant reported using marijuana "every few days" from approximately 2012 until 2014, and with lesser frequency from 2015 until 2018. *Id.*

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Defendant was involved in a wide array of criminal conduct, spanning from identity theft, to extortion, to running drugs. *See generally* PSR. The Court's sentence will deter Defendant and others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the public from

Defendant's actions. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a)(2).

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. Plea ¶ 1 (Count One). Defendant faces a maximum term of thirty years' incarceration and no minimum term. 18 U.S.C. § 1344. Defendant may also be fined up to $1,000,000.00. *See* 18 U.S.C. §§ 1344, 1349.

Defendant also pled guilty to one count of identity theft in violation of 18 U.S.C. § 1028(a)(7). Plea ¶ 1 (Count Two). Defendant faces a maximum term of five years' incarceration and no minimum term. 18 U.S.C. § 1028(b)(2)(B). Defendant may also be fined a maximum of $250,000.00, or not more than the greater of twice the gross gain or twice the gross loss. *See* 18 U.S.C. § 3571(b), (d).

Defendant also pled guilty to one count of extortionate collection of credit conspiracy and one count of extortionate collection of credit, both in violation of 18 U.S.C. § 894(a). Plea ¶ 1 (Counts Three and Four). Defendant faces a maximum term of twenty years' incarceration for each count with no minimum term. 18 U.S.C. § 894(a). Defendant may also be fined a maximum of $250,000.00, or not more than the greater of twice the gross gain or twice the gross loss. *See* 18 U.S.C. § 3571(b), (d).

In addition to facing terms of incarceration and fines, Defendant faces terms of supervised release for each count. However, multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e). For Count One, Defendant faces a maximum term of five

years of supervised release and no minimum term. 18 U.S.C. § 1344. If a condition of release is violated, Defendant may be sentenced to up to three years of incarceration without credit for pre-release incarceration or time previously served on post-release supervision. 18 U.S.C. § 3583(e)(3).

For Counts Two through Four, Defendant faces a maximum term of three years supervised release and no minimum term on each count. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years of incarceration without credit for pre-release incarceration or time previously served on post-release supervision. 18 U.S.C. § 3583(e)(3).

Defendant also faces a mandatory $100.00 special assessment per count. 18 U.S.C. § 3013(a)(2)(A).

**D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

All parties agree Defendant has a Criminal History Category of I. PSR ¶ 86; Gov't Sent'g Mem. at 3; Def.'s Sent'g Mem. at 2, ECF No, 661-1.

*1. Grouping Analysis*

Section 3D1.1–1.5 of the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines") provides rules for grouping offenses in a multiple-count case. "In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines." U.S.S.G. Ch. 3, Introductory Commentary.

First, the parties agree Counts 1 and 2 should be grouped pursuant to USSG § 3D1.2(d), because both offense levels are determined largely on the basis of the total amount of loss. *See* PSR ¶ 50; Gov't Sent'g Mem. at 3 ("The [G]overnment agrees with the Guidelines calculation set forth in the PSR."); Def.'s Sent'g Mem. at 2 ("[Defendant's Total Offense Level as calculated in the PSR is 20 . . . We do not dispute those calculations[.]").

Second, the parties agree Count 3—which charges extortionate collection of credit conspiracy with respect to John Doe #2 and John Doe #3—should be divided into two separate counts for grouping purposes because, "[p]ursuant to U.S.S.G. § 1B1.2(d), when a count charges a conspiracy to commit more than one offense, it shall be treated as if the defendant was convicted on a separate count of conspiracy for each offense[.]" PSR ¶ 40. Because Count 3 charged conspiracy pertaining to both John Doe #2 and John Doe #3, the parties agree the count should be divided into "Count 3(a)" (conspiracy with respect to John Doe #2) and "Count 3(b)" (conspiracy with respect to John Doe #3). *See id.*; Information ¶ 3.

The same division does not apply to Count 4 (extortionate collection of credit) because "[t]here is no mechanism within the guidelines [for doing so] since it is not conspiracy[.]" PSR ¶ 40. The U.S. Probation Office ("Probation") notes "the guideline would be calculated in relation to the more serious conduct, but in this case the calculations are the same for each victim, so the calculation is done for the extortion of [John Doe #2], and it is grouped with Count 3(a), pursuant to U.S.S.G. § 3D1.2(b)." *Id.* The parties agree Counts 3(a) and 4 are grouped for Guidelines purposes because they involve "the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." PSR ¶ 51; *see also* U.S.S.G. § 3D1.2(b). The parties also agree Stipulated Offense #1 is grouped with Counts 3(a) and 4 because it "embodies conduct that is treated as a specific offense

characteristic or adjustment related to these counts, pursuant to [U.S.S.G.] § 3D1.2(c)." PSR ¶ 51; Plea ¶ 2 (stating Stipulated Offense #1 pertains to Defendants "false statements regarding his involvement in the crimes charged in Count Three and Count Four").

This leaves Count 3(b) and Stipulated Offense #2 as standalone counts for grouping purposes. *See* PSR ¶¶ 64–75.

2. *Count Group I: Count 1 (Conspiracy to Commit Bank Fraud) and Count 2 (Identity Theft)*

The parties agree the operative Guideline for Count Group I is U.S.S.G. § 2B1.1. *Id.* ¶ 52. U.S.S.G. § 2B1.1(a)(1) calls for a Base Offense Level of 7 if the "offense of conviction has a statutory maximum term of imprisonment of 20 years or more[.]" *Id.* ¶ 52; Note 2(C) to U.S.S.G. § 2B1.1 ("In a case involving multiple counts sentenced under this guideline, the applicable Base Offense Level is determined by the count of conviction that provides the highest statutory maximum term of imprisonment."); *see also* 18 U.S.C. § 1349 (cross-referencing to 18 U.S.C. § 1344 for sentencing penalties); 18 U.S.C. § 1344 (prescribing a maximum term of incarceration of thirty years for bank fraud).

Furthermore, the parties agree an additional ten levels should be added because the loss exceeded $150,000.00 but was less than $250,000.00. PSR ¶¶ 18, 21, 53; U.S.S.G. § 2B1.1(b)(1)(F).

In sum, the parties calculate an Adjusted Offense Level of 17 for Count Group I. PSR ¶ 57.

3. *Count Group II: Count 3(a) (Extortionate Collection of Credit Conspiracy – John Doe #2), Count 4 (Extortionate Collection of Credit – John Doe #2), and Stipulated Offense #1 (Providing False Statements)*

The parties agree the operative Guidelines for Count Group II is U.S.S.G. § 2E2.1, which calls for a Base Offense Level of 20.[4] *Id.* ¶ 58.

The parties also agree a two-level enhancement is appropriate pursuant to U.S.S.G. § 3C1.1 because Defendant "attempted to obstruct or impede the administration of justice with respect to the investigation of the instant offense." PSR ¶ 62.

In sum, the parties calculate an Adjusted Offense Level of 22 for Count Group II. PSR ¶ 63.

The Courts notes, however, the parties did not properly apply a three-level "dangerous weapon" enhancement for Count Group II. *See, e.g.,* Rabah Sent'g Mem. and Ord. at 16–17. Pursuant to U.S.S.G. § 2E2.1(b)(1)(C), a three-level enhancement applies "if a dangerous weapon (including a firearm) was brandished or possessed[]" during the commission of extortionate extension of credit. This would result in an Adjusted Offense Level of 25, rather than 22, for Count Group II.

4. *Count 3(b) (Extortionate Collection of Credit – John Doe #3)*

The parties agree the operative Guidelines for Count 3(b) is U.S.S.G. § 2E2.1, which calls for a Base Offense Level of 20. *Id.* ¶ 64.

The parties also agree a two-level enhancement is appropriate pursuant to U.S.S.G. § 3C1.1 because Defendant "attempted to obstruct or impede the administration of justice with respect to the investigation of the instant offense." *Id.* ¶ 68.

In sum, the parties calculate an Adjusted Offense Level of 22 for Count 3(b). *Id.* ¶ 69.

---

[4] The offense level for Stipulated Offense #1 is less than "the highest offense level of the counts in [Count Group II]." *See* U.S.S.G. 3D1.3(a).

Parallel to Count Group II, the Court finds the parties failed to apply a three-level "dangerous weapon" enhancement for Count 3(b). *See* U.S.S.G. § 2E2.1(b)(1)(C). This would result in an Adjusted Offense Level of 25, rather than 22, for Count 3(b).

5. *Stipulated Offense #2 (Distribution with Intent to Distribute Marijuana and Cocaine)*

The parties agree § 2D1.1 is the operative Guideline for Stipulated Offense #2. *Id.* ¶ 70. Pursuant to U.S.S.G. § 2D1.1(c)(14), the lowest offense level for cocaine is 12. *See id.*

The parties also agree a two-level reduction is appropriate pursuant to U.S.S.G. § 2D1.1(b)(18) because Defendant "satisfied all five mitigating factors of [U.S.S.G.] § 5C1.2[.]" *Id.* ¶ 71.

In sum, the parties calculate an Adjusted Offense Level of 10 for Stipulated Offense #2. *id.* ¶ 75.

6. *Combined Offense Level (Multiple Count Adjustment)*

The parties apply U.S.S.G. §§ 3D1.4 and 3D1.5(a)–(c) to calculate the Combined Offense Level across the count groups. *See* PSR ¶ 76. Accordingly, one unit is assigned to the group with the highest offense level and "[o]ne additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious." *Id.*; *see also* U.S.S.G. § 3D1.4(a). One-half unit is assigned to any group that is 5 to 8 levels less serious than the group with the highest offense level. PSR ¶ 76; U.S.S.G. § 3D1.4(b). "Any groups that are 9 or more levels less serious than the group with the highest offense level are disregarded." PSR ¶ 76; U.S.S.G. § 3D1.4(c).

Here, the parties agree 1.0 units would apply to Count Group II and Count 3(b), as both have an Adjusted Offense Level of 22 (the groups with the highest offense level). *See* PSR ¶¶ 63, 69, 76. Because, according to the parties, Count Group I has an Adjusted Offense Level of 17—which is 5 levels "less serious"—0.5 units apply. *Id.* ¶ 76. Stipulated Offense Level #2 has

an Adjusted Offense Level of 10, which receives 0 units because it is "9 or more levels less serious" than the highest offense level. *Id.* The highest Adjusted Offense Level of 22 is increased pursuant to the number of units assigned by the amount indicated in the table at USSG §3D1.4. *See* PSR ¶ 78. Because 2.5 units are added, the parties agree an additional 3 levels are applied to the Adjusted Offense Level. PSR ¶ 78; USSG §3D1.4. Therefore, the parties calculate a Combined Adjusted Offense Level of 25. *Id.*

However, while the same number of units ultimately apply under U.S.S.G. § 3D1.4, pursuant to the Court's calculation of an Adjusted Offense Level of 25 for Count Group II and Count 3(b), the Court finds a Combined Adjusted Offense Level of 28.

7. *Mitigating Factors*

The parties also agree certain mitigating factors should apply.

First, the parties agree a three-level reduction for the timely acceptance of responsibility is appropriate pursuant to U.S.S.G. § 3E1.1(a) and (b). PSR ¶ 80–81; *see also* Plea ¶ 2.

Additionally, the parties agree a two-level reduction should apply because Defendant meets the criteria of a Zero-Point offender pursuant to U.S.S.G. § 4C1.1(a) and (b). *Id.* ¶ 82. The parties, therefore, calculate a Total Adjusted Offense Level of 20.

The Court disagrees. Defendant does not qualify as a Zero-Point Offender because: 1) he possessed a dangerous weapon during the instant offense, *see* U.S.S.G. § 4C1.1(a)(7), and 2) he "use[d] violence or credible threats of violence" when he "threw a rock at the Kasem family's home," *see* U.S.S.G. § 4C1.1(a)(3); Gov't Sent'g Mem. at 4. The Court, therefore, calculates a Total Adjusted Offense Level of 25.

8. *Applicable Guidelines Range*

Pursuant to the Guidelines Sentencing Table, a Total Adjusted Offense Level of 20 combined with a Criminal History Category of I results in a Guidelines range of thirty-three (33) to forty-one (41) months' incarceration. U.S.S.G. § 5A; PSR ¶ 115; Def.'s Sent'g Mem. at 2; Gov't Sent'g Mem. at 3. Pursuant to the Court's calculation, however, a Total Adjusted Offense Level of 25 which, combined with a Criminal History Category of I, results in a Guidelines range of fifty-seven (57) to seventy-one (71) months incarceration. U.S.S.G. § 5A.

This Court appreciates the sentencing arguments raised by all parties and seriously considered each in turn.

**E. Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have drawn the Court's attention to U.S.S.G. § 5K1.1. This Court appreciates and seriously considered the policy statement raised by the parties.

Finding no other pertinent policy statements on its own, the Court proceeds to the next § 3553(a) factor.

**F. The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6).

The parties do not raise any arguments pertaining to sentencing disparities. *See generally* PSR; Def.'s Sent'g Mem.; Gov't Sent'g Mem. For the reasons stated in this Memorandum and

Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentencing disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Pursuant to the Plea, Defendant agreed to mandatory restitution "in the full amount of each victim's losses as determined by the Court." Plea ¶ 1 (citing 18 U.S.C. §§ 3663A, 3664). According to Probation, "[a]t least one victim has indicated that they do not intend to seek restitution, and no other responses have been received from the other victims to date, so restitution cannot be determined at this time." PSR ¶ 45.

As of the time of sentencing, no other responses have been received regarding victim losses. The Court reserves its right, pursuant to 18 U.S.C. § 3664(d)(5), to hold an evidentiary hearing within ninety (90) days after this sentencing to determine the specific amounts owed to Defendant's victims. The Court will issue a Final Order of Restitution accordingly.

## IV. Conclusion

For the reasons set forth above, the Court sentences Defendant to time served with no term of supervised release to follow; mandatory restitution in accordance with the forthcoming Order of Restitution; and a $400.00 mandatory special assessment. This sentence is sufficient, but not greater than necessary, to accomplish the purposes of § 3553(a). The Court does not impose a fine given Defendant's present financial circumstances.

The Court expressly adopts the factual findings of the PSR and addenda thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion. The Court

advises Defendant he has fourteen (14) days to appeal the order and judgment of this court from the date the order and judgment are entered.

**SO ORDERED.**

**s/WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 24, 2026
Brooklyn, New York